62 F.Supp. 740 (1945)
FLARSHEIM
v.
UNITED STATES.
No. 77.
District Court, E. D. Missouri, E. D.
July 27, 1945.
Milton H. Tucker, of St. Louis, Mo., for plaintiff.
Harry C. Blanton, U. S. Atty., of Sikeston, Mo., Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, Wm. B. Waldo, and A. Barr Comstock, Sp. Assts. to the Atty. Gen., for defendant.
MOORE, District Judge.
This case, involving tax for the year 1933, was submitted to the Court upon the pleadings and the stipulation of facts which were filed herein. Briefs of the parties have been received and considered and now the Court being fully advised makes the following findings of fact:

Findings of Fact.
Jennie C. Flarsheim, hereinafter referred to as the "Plaintiff," resides at the Park Plaza Hotel in the City of St. Louis, State of Missouri. She is the widow of Milton Flarsheim, hereinafter referred to as "Milton." The said Milton Flarsheim was an employee, at the time of his death, of Seavey & Flarsheim Brokerage Company, hereinafter referred to as the "corporation." The corporation was and is a Missouri corporation with its principal office at Kansas City, Mo.
On March 14, 1934, the plaintiff filed an individual federal income tax return for the calendar year 1933 with the Collector of Internal Revenue in the City of St. Louis, Mo., disclosing gross income in the amount of $13,641.14, net income in the amount of $13,074.16, and a tax liability in the amount of $862.85, which tax liability was paid during the year 1934. Plaintiff in reporting gross income of $13,641.14 included under Item I the following:

Salaries, Wages, Commissions, Amount
 Fees, etc. received
----------------------------------------------------
Seavey & Flarsheim Brokerage
 Co., Kansas City, Missouri $12,000.00

On November 18th, 1935, plaintiff filed a claim for refund in the amount of $862.85 on Treasury Form 843 as revised June, 1930. The claim was signed by the plaintiff and sworn to before a notary public and demanded refund of $862.85 plus interest. Attached to the claim was a typed sheet giving the alleged reasons that the claim for refund should be allowed, which sheet read as follows:
*741 "Because $12,000.00 of the gross income of the taxpayer was reported under Item I as salaries, wages, commissions, fees, etc., received from Seavey & Flarsheim Brokerage Company, Kansas City, Missouri. In connection with the review of the Income Tax Return of Seavey & Flarsheim Brokerage Company for 1932 wherein this item of $12,000.00 paid to this taxpayer was deducted as a payment of salaries, wages, commissions, fees, etc., the Commissioner has disallowed this deduction by the Seavey & Flarsheim Brokerage Company. If it should be finally held that this payment by Seavey & Flarsheim Brokerage Company is a capital expenditure by Seavey & Flarsheim Brokerage Company as has been indicated, in such event the amount of $12,000.00 received by Jennie C. Flarsheim would not constitute taxable income to her. The difficulty is that before that question is finally and conclusively determined, the time within which this claim for refund may be legally filed will probably have expired. Therefore, this claim for refund is accordingly filed at this time in order to avoid the bar of the Statute of Limitations against the claim for refund in the event it should appear from the decision in the matter of the Seavey & Flarsheim Brokerage Company 1932 Income Tax Return, wherein the deductibility of this item is in question, that the payment of $12,000.00 made by Seavey & Flarsheim Brokerage Company to Jennie C. Flarsheim, the taxpayer herein, should not be considered as income by her.
"The principles decided in connection with the Seavey & Flarsheim Brokerage Company 1932 Income Tax Return as to the status of this $12,000.00 payment, i.e., whether a capital or an expense item, will necessarily determine the taxability or non-taxability to Jennie C. Flarsheim of the payment of $12,000.00 to her in 1933 as reported in Item 1 of her 1933 Federal Income Tax Return. Therefore, this claim for refund is filed at this time so as to be within the time provided by law for filing claims for refund of 1933 income taxes."
On September 30th, 1936, plaintiff was advised by letter of that date of the proposal of the Commissioner of Internal Revenue to disallow the claim. The text of said letter was as follows:
"Reference is made to your claim for refund in the amount of $862.85 income taxes for the taxable year 1933.
"Your claim is based on the statement that the salary reported by you as having been received from Seavey and Flarsheim Brokerage Co. of $12,000.00 should be eliminated as not being taxable income to you.
"You are advised that careful consideration has been given to the basis of your claim in connection with information on file in this office, and the evidence at hand discloses the sum paid to you in excess of the amount allowed as a deduction to the corporation did not represent a gift to you nor could it constitute a dividend to you, since you were not a stockholder, nor was the amount a return of capital for payment of property as neither you nor your husband had an interest in the corporation capable of being valued. Therefore, the entire amount received in 1933 is held to represent taxable income to you as reported in your return.
"For the foregoing reasons it is proposed to disallow your claim. If you do not acquiesce in this action and desire a hearing in Washington, and propose to rely on the facts and data presented in your claim, your request for such hearing, addressed to the Commissioner of Internal Revenue, Washington, D. C., should contain a statement to that effect.
"In the event you desire to present additional facts, you should file with the internal revenue agent in charge a brief, in triplicate, under oath, containing the following:
(a) the date and symbols of this letter;
(b) your mailing address, if changed from that stated in this letter;
(c) the additional facts;
(d) a request for a hearing, if desired.
"Upon receipt of the recommendation of that official, you will be advised of the determination of the Income Tax Unit at Washington.
"If no response is received within fifteen days, official notice of the disallowance of your claim will be issued by registered mail in accordance with section 1103(a) of the Revenue Act of 1932." 26 U.S.C.A. Int.Rev.Acts, page 652.
On December 1st, 1936, the plaintiff was advised by registered letter of that date by the Commissioner of Internal Revenue of the rejection of the claim for refund. The text of said letter was as follows:
*742 "Reference is made to Bureau letter dated September 30, 1936 wherein you were informed that the claim for refund indicated above would be disallowed. The letter also stated the reasons for the proposed disallowance.
"The claim having been disallowed or rejected on Schedule numbered 23006, this notice of disallowance is sent to you by registered mail as required by Section 1103 (a) of the Revenue Act of 1932."
The corporation of which Milton was an employee at the time of his death was, and now is, engaged in the food brokerage business and acts as selling agent for numerous principals and clients, and also sells food and similar merchandise at wholesale on its own account. It has numerous branch offices located in important cities in the middle west portion of the United States, through which its business is transacted. These offices are under the control of managers responsible to the home office at Kansas City. Milton entered the employ of the corporation's predecessor partnership about 1901. He was made manager of the branch office at St. Louis, Mo., and continued to manage this office for the corporation up to and including the year 1915. About that time an oral agreement was entered into between the corporation and Milton whereby beginning in 1916 Milton operated the St. Louis office as his own and retained all the profits and stood the losses from the business conducted in that office. Under this agreement, the St. Louis office was operated under the corporation's corporate name but none of the profits accrued to the corporation. Milton had his own bank account in St. Louis from which the expenses of the office were paid by him. All employees were hired and discharged by him. He managed the business as his own. Billings from the St. Louis office were made in the corporation's name and remittances were made to the corporation's principal office at Kansas City, Mo. These remittances were credited to Milton and paid over to him by the corporation. The corporation maintained complete statistical and transportation departments which were used by Milton; he paying an overhead for these services as well as interest on any funds advanced to him by the corporation. In 1928 Milton, who was then 60 years of age, became dissatisfied with the terms of the agreement under which he was working and contemplated severing his connection with the corporation and going into business for himself. The officers of the corporation were advised and authorized negotiations with Milton, as a result of which the parties on September 13, 1928, entered into an agreement. After the execution of the aforesaid agreement Milton agreed orally with the officers of the corporation that the services contemplated in said agreement were for his lifetime and he continued to be connected with the corporation's business until the time of his death on April 27, 1931. The corporation has paid the plaintiff the sum of $12,000 each and every year since Milton's death. The important provisions of the above agreement were as follows:
"This Agreement, entered into this 13th day of September, 1928, by and between Seavey & Flarsheim Brokerage Company, a Missouri corporation, hereinafter designated as first party, and Milton J. Flarsheim, of the City of St. Louis, hereinafter designated as second party,
"Witnesseth:
"Whereas, the second party has been in the employ of the first party for a period of many years, in charge and in control of their St. Louis Office, and
"Whereas, the first party is desirous of having the second party continue to manage and conduct the St. Louis office of the first party, and the second party is willing to so do if monetary provision is made for the care of second party's wife for her lifetime subsequent to the death of the second party and similar provision is made for second party in the event of his disability;
"Now, Therefore, in consideration of the premises, it is covenanted and agreed by and between the parties hereto as follows, to-wit:
"First: That the second party will continue to manage and conduct the office of the first party in the City of St. Louis under the terms and conditions under which he has heretofore operated and conducted said office.
"Second: When the second party shall, because of disability, be no longer able to operate said office, there shall be paid to the said second party all of the net earnings of the St. Louis office, computed in the same manner as heretofore.
"Third: In the event of the death of the said second party, there shall be paid by the first party to the wife of the said second party, Jennie C. Flarsheim, out of the net earnings of the said St. Louis office, *743 computed as heretofore, the sum of Twelve Thousand Dollars ($12,000.00) per annum, payable in equal monthly instalments of One Thousand Dollars ($1,000.00) each, on the first day of each and every calendar month. In the event the net earnings of said St. Louis office do not total the sum of Twelve Thousand Dollars ($12,000.00) per annum, then the said Jennie C. Flarsheim shall receive all of said earnings, but nothing herein shall be construed as entitling the said Jennie C. Flarsheim to receive more than Twelve Thousand Dollars ($12,000.00) per annum, if the earnings of the said St. Louis office shall exceed said sum.
"It is further understood and agreed that in the event the said Jennie C. Flarsheim shall receive less than the sum of Twelve Thousand Dollars ($12,000.00) in any one year because of the fact that the earnings of the St. Louis office for such year do not equal the sum of Twelve Thousand Dollars ($12,000.00), then and in that event, if in any subsequent year the earnings of said St. Louis office shall exceed Twelve Thousand Dollars ($12,000.00) she shall receive during such subsequent year if earned so much of the earnings in excess of Twelve Thousand Dollars ($12,000.00) as will equal the deficit between the sum of Twelve Thousand Dollars ($12,000.00) and the sum received by Jennie C. Flarsheim during any prior year, it being the intention hereby to give to the said Jennie C. Flarsheim the sum of Twelve Thousand Dollars ($12,000.00) per annum as long as she may live and as long as the total earnings during her lifetime and subsequent to the death of the said second party shall be equivalent to said sum, whether or not the earnings of the St. Louis office of first party for any particular calendar year or years shall fall below said sum."
During the period when Milton operated the Saint Louis office as his own, he also performed other valuable services for the corporation. He enjoyed the confidence of the trade and was outstanding as a salesman and contact man. He was instrumental in obtaining for the corporation many valuable clients and was regularly consulted by the officers of the corporation in connection with its business and in planning sales campaigns. He made frequent trips to Kansas City on behalf of the corporation and was in daily contact with its Kansas City office by telephone. The corporation and its officers regarded him as one of the most valuable men in the food industry and used him as one of its principal contact men with food manufacturers. He was particularly expert in handling some commodities in which the corporation dealt. At the time above referred to, when he was thinking of going into business for himself he gave as one of his reasons the building up of an estate which he could leave to his wife. Neither then nor afterwards did Milton or plaintiff own any of the corporation's stock.

Conclusions of Law.
From the Findings of Fact it is concluded as a matter of law:
That the plaintiff taxpayer's claim for refund is sufficient in form and content to satisfy the Revenue Laws.
That there is no material variance between the grounds as relied on in this action and those set forth in the plaintiff taxpayer's said claim for refund.
That the amount paid to plaintiff taxpayer by Seavey & Flarsheim Brokerage Company in the calendar year 1933 was income taxable to her as defined in Section 22 (a) Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 487.
That the plaintiff is not entitled to any recovery against the defendant and that the defendant is entitled to judgment in its favor and for its costs.